## STATE v. FRANCES ZANKER AND OTHERS.[1]

February 14, 1930.

No. 27,763.

*Arthur LeSueur,* for appellants.

*Neil M. Cronin,* City Attorney, and *Arthur P. Jensen,* Assistant City Attorney, for the state.

WILSON, C. J.

Defendants appealed from a judgment convicting them of disorderly conduct. The conviction was under a city ordinance which provides that "any person or persons who shall make, aid, countenance or assist in making any * * * disturbance or improper diversion, and all persons who shall collect in bodies or crowds in said city, for unlawful purposes or to the annoyance or disturbance

[1]Reported in 229 N. W. 311.

of the citizens or travelers" shall be punishable, etc. [Minneapolis Ordinances, 1872-1925, p. 760, § 2.]

Defendants were former employes of the Northbilt Leather Craft in Minneapolis and had been on a strike for about three weeks prior to September 5, 1929, the date of the alleged offense.

Norma Christensen, age 17, an employe of the same concern, and a nonstriker and nonunion member, was living with her parents at 3340 Thirty-fourth avenue. south. This home was in the residential district where homes were owned by the working class.

Defendants went to the above address in an automobile which they parked, and while there two of them remained in the car while the other two got out of the car and produced a banner bearing these words:

"Norma Christensen, strike breaker, lives here, who is lowering wages and lengthening hours for employes in the city of Minneapolis."

They carried the banner back and forth in front of the Christensen home about eight minutes. Mr. Christensen ordered them off the sidewalk, and they then continued marching back and forth in the street in front of the house. The police, responding to a neighbor's call, found 15 to 20 people gathered and "a lot of young people came up close." There seems to have been quite a bit of excitement. As the police took them away a bystander remarked: "I hope you get what's coming to you."

The claim is that the facts do not constitute a violation of the ordinance. Much is said in appellants' brief about the legal rights of strikers. But this case does not involve questions relating to industrial conflict between capital and labor. Norma Christensen was not a "strike breaker." She had not taken the place of a striker. These defendants were apparently trying to coerce her to become a striker, but that is not the reason they have been convicted. They did not solicit an opportunity to talk to her and persuade her by peaceful means. Their conduct discloses a studied plan which carried with it an attitude of hostility. They disregarded her right to be undisturbed. They resorted to offensive means. Their con-

duct necessarily carried some degree of humiliation and insult; it naturally tended to provoke resentment not only on the part of Norma Christensen and her family but also among the neighbors. It was an annoyance; it tended to disturb the immediate community; it was apparently an attempt to get Miss Christensen to do a certain thing (and the fact that that certain thing was to become a striker is not important) through an apparent hope to frighten, coerce or intimidate by exposing her to ridicule, disrepute, hatred and contempt. Defendants' conduct was not in good taste or usual, and we regard it as an "improper diversion."

The remark of the bystander reflects the state of mind engendered by the conduct which had a tendency to cause a breach of the peace. This is the primary element of disorderly conduct. Indeed, conduct is disorderly in the ordinary sense when it is of such nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby. The probable and natural consequence of the conduct is the important element. We are of the opinion that the evidence is sufficient to sustain the conviction.

Affirmed.