**STATE of Minnesota, Respondent,**

v.

**Sarah Beth JANECEK, Appellant.**

**A16-1838**

Court of Appeals of Minnesota.

Filed October 9, 2017

Hennepin County District Court, File No. 27-CR-15-31717

Lori Swanson, Attorney General, St. Paul, Minnesota; and Susan L. Segal, Minneapolis City Attorney, Jennifer Saunders, Assistant City Attorney, Minneapolis, Minnesota (for respondent).

Joseph P. Tamburino, Caplan & Tamburino Law Firm, P.A., Minneapolis, Minnesota (for appellant).

Considered and decided by Reyes, Presiding Judge; Jesson, Judge; and Toussaint, Judge.*

## OPINION

JESSON, Judge

A long-standing disagreement between two neighbors who share a common driveway lies at the heart of this appeal. Appellant Sarah Janecek challenges the sufficiency of the evidence to sustain her conviction of misdemeanor disorderly conduct after her neighbors video-recorded her knocking over their trash bins. Because a contemporaneous witness is not required to support a conviction of disorderly conduct and there is sufficient evidence to sustain her conviction, we affirm.

## FACTS

Janecek and Lee Aaron and Diane Rosenthal have been next-door neighbors for over a decade. In recent years, however, the relationship had become strained to the point where they no longer speak to each other, and the Rosenthals installed security cameras to monitor the outside of their home.[1]

In an August 2013 video, which formed the basis for Janecek's conviction, she is seen returning her garbage can to the common area between the neighbors' garages. After doing so, she pushes the Rosenthals' recycling bin forward and knocks over their trash bin, spilling debris onto the Rosenthals' side of the driveway. Janecek then returns another of her bins and walks away.

Janecek was charged with stalking, trespassing, disorderly conduct, and littering. Minn. Stat. §§ 609.749, subd. 2(3) (2014); .605, subd. 1(b)(2) (2014); .72, subd. 1(3); Minneapolis, Minn., Code of Ordinances § 427.30 (2014). At Janecek's jury trial, the state introduced 17 videos into evidence, which documented a history of confrontations between the neighbors, from verbal altercations to property-line disputes.[2] Referencing previous disputes, which included the August 2013 incident, Lee Aaron Rosenthal testified, "[We] were very tired of our property being moved, dumped, and then we had a problem with the driveway being blocked, so I put [the cameras] up to protect ourselves." He said that he felt "powerless" and "devastated."

In regard to the August 2013 incident, which is the sole basis for the disorderly

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The cause of the strife, according to Lee Aaron Rosenthal, was that he found debris strewn on his property on over 25 different occasions. He suspected that Janecek had been moving and knocking over his garbage bins. In contrast, Janecek testified that her inadvertent report about illegal rental units in the Rosenthal home precipitated the ongoing discord.

2. In a prior case, we reversed and remanded Janecek's appeal of the district court's denial of her petition for a harassment restraining order against Lee Aaron Rosenthal for his video surveillance. *Janecek v. Rosenthal*, No. A16-1885, 2017 WL 2535728, at *1 (Minn. App. 2017). We concluded that the district court erred by dismissing her petition without holding an evidentiary hearing. *Id.*

conduct conviction, Janecek admitted that she pushed the Rosenthals' containers that spilled debris onto their driveway. She also admitted that on different occasions, she had moved the Rosenthals' containers and a fallen tree branch to obstruct the Rosenthals' side of the driveway. She explained that she was trying to make a statement by moving the tree branches. When questioned at trial about knocking over the Rosenthals' trash can on another occasion, Janecek admitted that she had simply "had it," stating that when the video camera recorded her actions that day, Lee Aaron Rosenthal was yelling at her, calling her vulgar names.

The jury found Janecek guilty of disorderly conduct and two counts of littering, but acquitted her of stalking and trespassing.[3] The district court stayed execution of her ten-day sentence for one year. Janecek appeals.

## ISSUES

I. Does the plain meaning of Minnesota Statutes section 609.72, subdivision 1, require a contemporaneous witness to the underlying conduct to sustain a conviction for disorderly conduct?

II. Was there sufficient evidence to sustain Janecek's conviction of disorderly conduct?

## ANALYSIS

Janecek was convicted of disorderly conduct under Minnesota Statutes section 609.72, subdivision 1(3). Subdivision one provides that:

Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:

. . . .

(3) engage in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger or resentment in others.

Minn. Stat. § 609.72, subd. 1.

Janecek contends that the evidence was insufficient to support her conviction. First, she argues that in order to constitute disorderly conduct, her conduct must be witnessed by at least one person, and there was no contemporaneous witness to her conduct. Second, she contends that the act of knocking over a garbage can and spilling its contents is not offensive, obscene, abusive, boisterous, or noisy conduct, and there was no evidence to demonstrate that she knew, or had reason to know, that knocking over a trash can would reasonably tend to alarm, anger, or disturb others. *See id.*

The first claim, that the charged conduct must have been observed in order to constitute disorderly conduct, requires construction of a criminal statute and presents an issue of law, which we review de novo. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002). But in considering Janecek's second insufficient evidence claim, this court's review is limited to a careful analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jury to reach its verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476-77

---

3. Janecek's littering charge was based on evidence that she dumped yard waste onto the city streets. On appeal, Janecek challenges only her conviction of disorderly conduct. *See*

*State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997) (stating that issues not briefed are forfeited), *review denied* (Minn. Aug. 5, 1997).

(Minn. 2004). We assume the jury believed the state's evidence and disbelieved any contrary evidence. *State v. Heiges*, 806 N.W.2d 1, 17 (Minn. 2011). And we defer to the jury's credibility determinations. *See State v. Barshaw*, 879 N.W.2d 356, 366 (Minn. 2016).

### I. The disorderly conduct statute does not require a contemporaneous witness to the underlying conduct.

Janecek argues that the evidence was insufficient to convict her of disorderly conduct because the disorderly conduct statute, when read as informed by precedent, requires a witness to the offensive conduct, which did not occur in this case. Review of this claim requires this court to interpret Minnesota Statutes section 609.72. "The objective of statutory interpretation is to ascertain and effectuate the . . . intent" of the legislature. *State v. Haywood*, 886 N.W.2d 485, 488 (Minn. 2016). "If the [l]egislature's intent is clear from the statute's plain and unambiguous language, . . . [we] interpret the statute according to its plain meaning" without engaging in construction. *Id.*; *see also State v. Nodes*, 863 N.W.2d 77, 81 (Minn. 2015) (stating that when courts have previously interpreted the statute, that interpretation acts as a guide in subsequent challenges to the statute).

The disorderly conduct statute provides that anyone who engages in offensive conduct "tending reasonably to arouse alarm, anger, or resentment in others" commits a misdemeanor. Minn. Stat. § 609.72, subd. 1(3). By its plain language, the statute does not require that the "alarm, anger or resentment" occur while witnessing the offensive conduct. In contrast, the legislature in other statutes sometimes requires the presence of another when defining criminal conduct. For example, under the indecent-exposure statute, the conduct must occur "in any public place, or in any place where others are present." Minn. Stat. § 617.23, subd. 1 (2016). Similarly, Minnesota law prohibits manufacturing or storing methamphetamine "in the presence of a child." Minn. Stat. § 152.137, subd. 2a (2016). And the robbery statute requires that the defendant take personal property "from the person or in the presence of another." Minn. Stat. § 609.24 (2016). Here, the legislature was silent when it came to the question of physical presence. And that silence does not create ambiguity in the statute. *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012). As a result, the district court applied the plain and unambiguous language of the disorderly conduct statute precisely when it held that:

> the disorderly conduct statute does not *require* that anyone actually witness the offensive conduct, it is enough that an individual person witness the consequence or result of the offensive conduct *if* the actor had reasonable grounds to know that witnessing the consequences of [the] conduct would tend to alarm, anger or disturb others.

Janecek contends that a series of Minnesota appellate cases support her interpretation of the statute to require at least one witness. She points to *State v. Reynolds*, 243 Minn. 196, 198, 66 N.W.2d 886, 888 (1954), when the supreme court addressed the constitutionality of a statute that provided that every person who engages in brawling or fighting shall be guilty of disorderly conduct. The court upheld the constitutionality of the statute and also addressed the longstanding definition of disorderly conduct:

> Conduct is "disorderly" in the ordinary sense when it is of such nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby.

*Id.* at 200, 66 N.W.2d at 889 (*citing State v. Cooper*, 205 Minn. 333, 338, 285 N.W. 903, 905 (1939); *State v. Perry*, 196 Minn. 481, 482, 265 N.W. 302, 302 (1936); *State v. Zanker*, 179 Minn. 355, 357, 229 N.W. 311, 312 (1930)).

Seizing upon the phrase, "the peace and quiet of persons *who may witness it*," Janecek argues that longstanding precedent requires a witness to conduct in order that it be labeled "disorderly." She contends the phrase in the statute, which requires conduct that tends to "arouse alarm, anger or resentment in *others*," reinforces that at least one "other" must witness the offensive conduct.[4]

But these earlier cases, while they describe the nature of disorderly conduct, do not take the additional step to require a contemporaneous witness to the conduct. Further, we note that *Reynolds, Perry, Zanker,* and *Cooper* all discuss disorderly conduct in the context of municipal ordinances or statutes which differ from the present-day disorderly conduct law. For example, the predecessor statute examined in *Reynolds* provided that "every person who engages in brawling or fighting shall be guilty of disorderly conduct." *Reynolds*, 243 Minn. at 198, 66 N.W.2d at 888.[5] When the legislature adopted the framework for the current statute in 1963, it broadened the language to include "offensive, obscene, or abusive language, or in boisterous and noisy conduct" in addition to "brawling or fighting." 1963 Minn. Laws ch. 753, art. 1, § 609.72, at 1231. Finally, Janecek does not focus on the most relevant portion of these earlier cases: the admonition that whether particular conduct is disorderly "must at all times be dependent upon the facts of each particular case and the circumstances that surround the incident." *Reynolds*, 243 Minn. at 201, 66 N.W.2d at 890.[6]

 Without question, witnesses to conduct often present the best evidence of offensive conduct that tends "reasonably to arouse alarm, anger or resentment in others." Minn. Stat. § 609.72, subd. 1(3). But despite a myriad of cases that refer to these witnesses, no case specifically requires one. Given the plain language of the statute, we conclude that it does not require that the disorderly act be witnessed in person at the time of the act.

## II. There is sufficient evidence to sustain Janecek's conviction of disorderly conduct.

 Having concluded that the plain language of the statute does not require a contemporaneous witness to the underly-

---

4. Although the statute refers to arousing alarm, anger or resentment in *others*, the supreme court, applying the canons of statutory construction, has clarified that the statute does not exclude conduct directed against only one individual. *State v. Zais*, 805 N.W.2d 32, 39-40 n.4 (Minn. 2011).

5. This version of the statute was adopted in 1953. 1953 Minn. Laws ch. 661, § 1, at 822. Until then, Minnesota had no statute directly addressing disorderly conduct. Rather, the subject was "left almost entirely to municipal ordinance." Minn. Stat. Ann. § 609.72 advisory comm. cmt. (West 2009).

6. Nor does *City of St. Paul v. Campbell*, 287 Minn. 171, 173, 177 N.W.2d 304, 306 (1970), stand for the proposition that conduct must be observed in order to be disorderly. In *City of St. Paul*, the supreme court relied upon language from *Reynolds*, which noted that "no one witnessed the act; therefore, there was no one who could be disturbed or provoked to resentment. Defendant proceeded in a quiet and orderly manner." *Id.* Relying on this precedent, the supreme court held that the evidence that defendant took photos of a nude minor was insufficient to support conviction under a St. Paul ordinance which dealt with rioting. *Id.* at 172, 174, 177 N.W.2d at 306. Here, the current state statute is far broader than the city ordinance on rioting, which the supreme court addressed in *City of St. Paul.*

ing conduct, we turn to Janecek's remaining sufficiency challenge. To obtain a conviction of disorderly conduct, the state must prove that a person "engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others." Minn. Stat. § 609.72, subd. 1(3). The person must know or have reasonable grounds to know that his or her conduct "will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." *Id.* at subd. 1. But to sustain a disorderly-conduct conviction, an actual breach of the peace need not result, and others need not actually be affected. *State v. Soukup*, 656 N.W.2d 424, 428 (Minn. App. 2003), *review denied* (Minn. Apr. 29, 2003); *Zais*, 805 N.W.2d at 39-40.

Here, the August 2013 video showed Janecek pushing one of the Rosenthals' containers, which knocked over another bin and spilled its contents. At trial, Janecek admitted that she knew that she had pushed over the container and had spilled debris onto the Rosenthals' driveway. Although she testified that she did not intend to knock over the bin, the jury was free to "infer that a person intends the natural and probable consequences of [her] actions." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). And Diane Rosenthal testified that the incidents with Janecek, which included the August 2013 incident, made her feel "unsettled, fearful, not sure what was going to happen." When considered in light of the ongoing animus between the neighbors and Janecek's admissions to the August 2013 incident and a few similar occurrences, the jury was free to determine that Janecek's conduct was offensive and could infer that she knew that knocking over the Rosenthals' trash can would arouse anger and alarm in them. We conclude that there was sufficient evidence to sustain Janecek's conviction of disorderly conduct.

Janecek argues that her conduct was not objectively disorderly. She also asserts that the Rosenthals failed to testify that they were alarmed, angered, or felt resentment. But the question here is whether the jury could reasonably conclude from the evidence that Janecek's conduct was disorderly—a term the legislature has broadened to include conduct that is not only obscene, boisterous, or noisy, but also "offensive." *See* Minn. Stat. § 609.72, subd. 1(3); *see also Reynolds*, 243 Minn. at 201, 66 N.W.2d at 890 (stating that whether conduct is disorderly depends on the facts and circumstances of each case). And while we agree that knocking over a trash container is not obscene, boisterous, or particularly noisy, given the backdrop of the neighbors' ongoing feud, there was sufficient evidence by which the jury could have found it offensive. Finally, despite Janecek's claim that she explicitly testified that she did not know her conduct would alarm, anger, or disturb the Rosenthals, the jury was free to reject her testimony and believe the testimony of the Rosenthals instead. *See Heiges*, 806 N.W.2d at 17 (stating that we assume the jury believed the state's evidence and disbelieved any contrary evidence).

## DECISION

Under Minnesota Statutes section 609.72, subdivision 1(3), a contemporaneous witness to the underlying conduct is not necessary to sustain a conviction of disorderly conduct. The evidence presented at trial was sufficient for the jury to conclude that Janecek's conduct was offensive and that she knew it was likely to arouse anger, alarm, and resentment.

**Affirmed.**