*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0992**

State of Minnesota,
Respondent,

vs.

Mitchell David Johnson,
Appellant.

**Filed April 15, 2024
Affirmed
Frisch, Judge**

Washington County District Court
File No. 82-CR-22-889

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Joseph D. Van Thomme, K. Alexis McKim, Woodbury City Attorneys, Eckberg Lammers, P.C., Stillwater, Minnesota (for respondent)

Stephen M. Foertsch, Samantha J.S. Foertsch, Bruno Law, PLLC, Golden Valley, Minnesota (for appellant)

Considered and decided by Frisch, Presiding Judge; Worke, Judge; and Gaïtas, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

In this direct appeal from the judgments of conviction for domestic assault and disorderly conduct, appellant challenges the sufficiency of the evidence supporting his convictions. Because the evidence is sufficient to sustain both convictions, we affirm.

# FACTS

On March 20, 2022, appellant Mitchell David Johnson and his then-wife R.R. argued throughout the day. After putting their children to bed, Johnson and R.R. continued to argue in the basement of their home. As the argument escalated, Johnson yelled, swore, threw things including a laundry basket, stool, and desk organizer, and swiped papers off his desk onto the floor.

R.R. eventually went upstairs. Johnson began to do the dishes. R.R. told Johnson he was too loud and she was concerned he would wake up the children. The couple resumed arguing, and one of the children came out of their bedroom. R.R. put the child back to bed and checked on the other child. R.R. then went to the basement and resumed arguing with Johnson. Johnson screamed, called R.R. names, and slammed his fists on the desk. R.R., standing five to six feet away, grew concerned for her safety and began to back away from Johnson. As R.R. backed away, Johnson began to turn toward R.R. and something hit R.R. in the face. Johnson had thrown his phone, which struck R.R.'s face.

Johnson immediately apologized to R.R. and implored her not to call 911, telling her, "you'll ruin my life." R.R. retrieved her phone, went into a bathroom, and called 911. Johnson continued to implore R.R. not to call 911. When R.R. was connected with a 911 dispatcher, R.R. told Johnson: "Get out of here! Get out of here!" Johnson went to the garage, and R.R. remained in the bathroom on the phone with the 911 dispatcher until law-enforcement officers arrived at the couple's home.

Respondent State of Minnesota charged Johnson with misdemeanor domestic assault-harm pursuant to Minn. Stat. § 609.2242, subd. 1(2) (2020), and disorderly

conduct-brawling or fighting pursuant to Minn. Stat. § 609.72, subd. 1(1) (2020). A jury found Johnson guilty of both counts. After the jury returned guilty verdicts for both offenses, Johnson moved for judgment of acquittal or a new trial. The district court denied the motion, entered convictions on both counts, and sentenced Johnson on the domestic-assault-harm conviction.

Johnson appeals.

**DECISION**

Johnson argues that the evidence at trial was insufficient to prove his guilt of both convictions. We address each argument in turn.

## I. The evidence was sufficient to establish that Johnson committed domestic assault-harm.

To convict Johnson of domestic assault-harm, the state was required to prove beyond a reasonable doubt that Johnson "intentionally inflict[ed] or attempt[ed] to inflict bodily harm" against "a family or household member." Minn. Stat. § 609.2242, subd. 1(2).

On appeal, Johnson disputes only the sufficiency of the state's evidence that he intended to inflict or attempted to inflict bodily harm on R.R. He argues that the state was required to prove beyond a reasonable doubt that he intended to throw the phone at R.R. and that the evidence at trial supports a reasonable inference that he lacked such intent. Because the state was required to prove only that Johnson intended to throw the phone, and the evidence sufficiently establishes Johnson intended to do so, we disagree.

Johnson's contention that the state was required to prove that he intended to throw his phone *at* R.R. is unavailing because our caselaw establishes that domestic assault-harm

3

is a general-intent crime. *State v. Lampkin*, 994 N.W.2d 280, 291 (Minn. 2023) (citing *State v. Fleck*, 810 N.W.2d 303, 309-10 (Minn. 2012)). "This general intent requirement means that although the State must prove [the defendant] intended to do the physical act forbidden, the State does not need to prove that [they] meant to or knew that [they] would violate the law or cause a particular result." *Id.* (quotations omitted). Thus, the state was required to prove that Johnson did not "accidentally or involuntarily" throw the phone. *Id.* (quotations omitted). And Johnson conceded at oral argument that the evidence for domestic assault-harm was sufficient to sustain the verdict if the state was required only to prove that he intended to throw the phone.

Notwithstanding this concession, we also conclude, on our independent review of the record, that the evidence was sufficient to sustain the verdict. Because the state relied on circumstantial evidence to prove Johnson's intent, we follow a two-step process in reviewing the sufficiency of the evidence to support this conviction.[1] *State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011). First, we identify the circumstances proved, "defer[ring], consistent with [the] standard of review, to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation

---

[1] The state contends that it offered direct evidence of Johnson's intent through R.R.'s statements to the 911 dispatcher. But those statements are not direct evidence of R.R.'s intent and instead reflect R.R.'s perception of Johnson's mental state, not Johnson's actual mental state. *See Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (defining circumstantial evidence); *see also Lampkin*, 944 N.W.2d at 291 (stating that "intent is generally proven by circumstantial evidence"). Because an inferential step is required to connect R.R.'s perception to the disputed element, the evidence is circumstantial and the two-step test applies.

omitted). Second, we "determine whether the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." *Hawes*, 801 N.W.2d at 669 (quotation omitted). We give deference to the fact-finder when reviewing the circumstances proved, but give "no deference to the fact finder[']s choice between reasonable inferences." *Id.* (quotation omitted).

The state proved the following circumstances regarding Johnson's intent: (1) Johnson and R.R. had been in a disagreement that spanned the entire day of the incident; (2) Johnson was angry and frustrated with R.R.; (3) Johnson yelled, swore, and threw objects while fighting with R.R. in the basement; (4) Johnson began to turn toward R.R. who was standing five to six feet away and threw his cell phone, which hit R.R. directly in her face; (5) Johnson apologized immediately after the phone hit R.R.; and (6) R.R. told a 911 dispatcher that Johnson "threw something at me," and when asked if Johnson acted intentionally, she stated, "yeah, he was angry," and "[he] tried hitting me in the mouth." These circumstances proved are consistent with guilt and support only the inference that Johnson intended the volitional act of throwing the phone. And Johnson offers no alternative reasonable hypothesis to the contrary. The evidence was thus sufficient to establish that Johnson intended to throw his phone.

## II. The evidence was sufficient to establish that Johnson engaged in disorderly conduct-brawling or fighting.

To convict Johnson of disorderly conduct-brawling or fighting, the state was required to prove beyond a reasonable doubt that Johnson (1) "engage[d] in brawling or

5

fighting" and (2) knew or had reasonable grounds to know that it would, or would tend to, "alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1(1). On appeal, Johnson argues the state did not introduce sufficient evidence to prove either element.

First, Johnson argues that the evidence is insufficient to support his conviction because the plain and ordinary meaning of "brawling or fighting" under Minn. Stat. § 609.72, subd. 1(1), requires the state show he engaged in a physical conflict with R.R. The state contends that the plain language of Minn. Stat. § 609.72, subd. 1(1), prohibits both physical and non-physical noisy conflict. "We review questions of statutory interpretation de novo." *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019).

We first consider if Minn. Stat. § 609.72, subd. 1(1), is ambiguous with respect to the phrase "brawling or fighting." A statute is ambiguous if it is "subject to more than one reasonable interpretation." *State v. Bowen*, 921 N.W.2d 763, 765 (Minn. 2019) (quotation omitted). We construe "words and phrases . . . according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08 (2022). When the legislature has not defined the relevant terms, "we may consider dictionary definitions to determine a word's common usage." *State v. Cummings*, 2 N.W.3d 528, 533 (Minn. 2024).

Although the legislature has not defined "brawling or fighting," we conclude that the statute is unambiguous. A "brawl" is "[a] noisy quarrel or fight." *Black's Law Dictionary* 232 (11th ed. 2019). And a "quarrel" is "[a]n altercation or angry dispute; an exchange of recriminations, taunts, threats, or accusations between two persons." *Id.* at 1500; *see also The American Heritage Dictionary of the English Language* 1441 (5th ed.

6

2018) (defining quarrel as "[a]n angry dispute; an altercation"). Thus, the plain language of "brawl" includes "quarrel" and is not limited to physical altercations.

Johnson contends that "brawling" is a form of "fighting," and fighting requires a physical altercation. But Johnson offers no principled basis to conclude the legislature intended to collapse two prohibited actions into one. *See Nelson v. Schlener*, 859 N.W.2d 288, 294 (Minn. 2015) ("When the Legislature uses different words [in a statute], we normally presume that those words have different meanings."); *Goldman v. Greenwood*, 748 N.W.2d 279, 283 (Minn. 2008) (stating that "we normally interpret the conjunction 'or' as disjunctive rather than conjunctive"); *see also* Minn. Stat. § 645.16 (2022) ("Every law shall be construed, if possible, to give effect to all its provisions.").

Johnson's argument that this interpretation renders Minn. Stat. § 609.72, subd. 1(3) (2020), which prohibits "engag[ing] in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others," superfluous is similarly unavailing. While "brawling or fighting" may overlap with such conduct, Johnson cites no authority standing for the proposition that the legislature intended that prohibited conduct may only be captured by one part of the statute.

We next consider the sufficiency of the state's evidence. Because the state offered direct and circumstantial evidence of Johnson's actions, we first consider whether the direct evidence was sufficient to prove the element, and if not, we then apply the two-step circumstantial-evidence test. *See State v. Porte*, 832 N.W.2d 303, 309-10 (Minn. App. 2013) (citing *State v. Silvernail*, 831 N.W.2d 594, 602-06 (Minn. 2013) (Stras, J.,

7

concurring)) (applying a direct-evidence test first to determine sufficiency when the state offered direct and circumstantial evidence of a disputed element).

R.R.'s testimony is direct evidence of Johnson's actions. In her testimony, R.R. detailed Johnson's behavior—yelling, swearing, slamming his fists, throwing objects, and ultimately hitting her with the phone. Based on this evidence, the jury reasonably concluded that the state proved beyond a reasonable doubt that Johnson engaged in "brawling or fighting." *See Bernhardt*, 684 N.W.2d at 476-77 (noting an appellate court will not disturb the verdict "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that defendant was proven guilty of the offense charged").

Second, Johnson argues that the state's evidence was insufficient to show he possessed the requisite knowledge to support his disorderly conduct conviction. To prove Johnson committed disorderly conduct, the state was required to prove that he engaged in brawling or fighting while "knowing or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1; *see also State v. Janecek*, 903 N.W.2d 426, 430-31 (Minn. App. 2017) (stating that a conviction under the disorderly conduct statute does not require "an actual breach of the peace" caused by the prohibited conduct, that others are "actually" affected by such conduct, or that the conduct be directed against a contemporaneous witness). We apply the two-part circumstantial-evidence test to determine the sufficiency of evidence of Johnson's knowledge. *State v. Ali*, 775 N.W.2d 914, 919 (Minn. App. 2009), *rev. denied* (Minn. Feb. 16, 2010).

8

The state proved the following circumstances regarding Johnson's knowledge: (1) two minor children were in the home during the incident; (2) Johnson was doing the dishes loudly, muttering, and throwing the dishes around; (3) R.R. told Johnson she was concerned he would wake up the children when he was doing the dishes; (4) during this exchange, one of the children woke up and came out of their room; and (5) soon after, Johnson resumed screaming, swearing, and slammed his fists onto a desk in the basement. These circumstances proved are consistent only with guilt and support the jury's implicit finding that Johnson knew or should have known his conduct could or would tend to alarm or disturb his children. *See Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017) (requiring that there be a rationale hypothesis of innocence). Johnson offers no response or alternative rational hypothesis other than guilt. *Id.*

We therefore conclude that the evidence was sufficient to prove that Johnson committed disorderly conduct pursuant to Minn. Stat. § 609.72, subd. 1(1).

**Affirmed.**